UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Case No. 23-cr-00409 (DLF) |
| v. | : | Case No. 23-cr-00414 (DLF) |
| | : | |
| ESVETLANA CRAMER and | : | |
| STEVEN BOYD BARBER, | : | |
| | : | |
| Defendants | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. Esvetlana Cramer (CRAMER) and Steven Boyd Barber (BARBER) have pleaded guilty to two second degree misdemeanors, a violation of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count One) and a violation of 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in any Capitol building) (Count Two). For the reasons set forth herein, the government requests that this Court sentence both CRAMER and BARBER to 14 days' incarceration on Count One and 36 months' probation on Count Two. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

I. **Introduction**

Defendants CRAMER, a 55-year old former nursing assistant, and BARBER, a 43-year old unemployed former real estate agent, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential

1

election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

CRAMER and BARBER have pleaded guilty to violations of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count One) and 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in any Capitol building) (Count Two). The government's recommendation is supported by the defendants' (1) lengthy period inside the U.S. Capitol Building and (2) lack of remorse and failure to accept the seriousness of their actions that day.

The Court must also consider that the defendants' conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for their actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of CRAMER's and BARBER's respective crimes support a total sentence of 14 days' incarceration, 36 months of probation, 60 hours of community service, and $500 in restitution for each defendant in this case.

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

## II. Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary repetition, the government refers to the general summary of the attack on the U.S. Capitol. *See* DE 29 (CRAMER) and DE 34 (CRAMER).

*Defendants Cramer and Barber's Role in the January 6, 2021 Attack on the Capitol*

On January 6, 2021, both CRAMER and BARBER traveled by bus to Washington D.C. CRAMER wore an American flag style long sleeve shirt and a red, white, and blue stocking cap over a blue baseball cap. She also wore a scarf covering her face at times. BARBER wore a black jacket and pants with a red "Make America Great Again" baseball cap and a blue Trump flag. *See* Image 1.



*Image 1: Photo outside the U.S. Capitol from Redux Pictures*

The United States Capitol Police's security cameras (CCTV) captured CRAMER and BARBER entering the U.S. Capitol building at approximately 2:43 pm through the Rotunda Door. *See* Image 2 (CRAMER circled in red; BARBER in yellow).



*Image 2: CRAMER and BARBER entering through the Rotunda doors*

From there, CRAMER and BARBER traveled further into the Capitol. While at and inside the Capitol, CRAMER carried a "Latinos for Trump" sign. *See* Image 3.



Image 3 – Photograph from Times Leader

CRAMER and BARBER then entered the Rotunda, where CRAMER took photos. *See* Image 4.



Image 4 – CRAMER and Baber in the Rotunda

CRAMER and BARBER remained in the Rotunda and moved around the room. See Image 5.



Image 5 – Closeup of CRAMER and Barber in the Rotunda

CRAMER and BARBER walked toward the Rotunda door at approximately 3:12 p.m.  *See* Image 6.



Image 6 – CRAMER and BARBER at the Rotunda door exit

CRAMER and BARBER then exited the U.S Capitol building through the Rotunda door. They spent approximately 30 minutes inside the U.S. Capitol.  *See* Images 6 and 7.

6



Image 7 -- CRAMER and BARBER exiting through the Rotunda doors

*CRAMER and BARBER's Post-arrest Interview with the FBI*

On June 30, 2021, law enforcement interviewed CRAMER at her residence in Harveys Lake, Pennsylvania. During the interview, CRAMER confirmed she owned telephone number ending in 5532 and was present at the U.S. Capitol on January 6, 2021. She traveled to Washington D.C. with BARBER on a bus. CRAMER admitted she entered the U.S. Capitol building during the events of January 6.

Law enforcement also interviewed BARBER at his residence in Tunkhannock, Pennsylvania. BARBER admitted he was at the U.S. Capitol on January 6, 2021, but claimed he did nothing illegal or wrong. BARBER declined to speak about this case any further and ended the interview at that time.

*The Charges and Plea Agreement*

On July 31, 2023, law enforcement arrested both CRAMER and BARBER on a complaint for violating 18 U.S.C. § 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D)&(G). On November

17, 2023, the government charged CRAMER and BARBER by a two-count Information with violating 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count One) and 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in any Capitol building) (Count Two).

On January 12, 2024, pursuant to plea agreements, CRAMER and BARBER pleaded guilty to both Counts of the Information. As part of their respective plea agreements, the defendants each agreed to pay $500 in restitution to the Architect of the Capitol.

### III. Statutory Penalties

CRAMER and BARBER now face sentencing for violating 40 U.S.C. § 5104(e)(2)(D) and 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, the defendants face up to six months of imprisonment and a fine of up to $5,000. The defendants must also pay restitution under the terms of their plea agreements. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As these offenses are Class B Misdemeanors, the Sentencing Guidelines do not apply. 18 U.S.C. § 3559; U.S.S.G. § 1B1.9.

### IV. Sentencing Factors Under 18 U.S.C. § 3553(a)

In these misdemeanor cases, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 14 days' incarceration, thirty-six months of probation, 60 hours of community service, and $500 in restitution for each defendant.

#### A. The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while

8

staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing CRAMER and BARBER's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for misdemeanor defendants like CRAMER and BARBER, the absence of violent or destructive acts is not a mitigating factor. Had CRAMER and BARBER engaged in such conduct, they would have faced additional criminal charges.

One of the most important factors in this case is the lengthy time CRAMER and BARBER spent inside the U.S Capitol Building. Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of incarceration in this matter.

### B. CRAMER and BARBER's History and Characteristics

As set forth in their PSRs, Defendants do not have any criminal history.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this

defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Although CRAMER and BARBER have no prior criminal history, their decision to participate in the events of January 6, 2021, to enter the U.S. Capitol Building during the riot, and to contribute to the chaos inside calls for substantial deterrence.  There are appropriate ways to express one's political opinions; participating in a riot targeted at Congress' certification of the Electoral College vote was obviously not one of those ways.  An appropriate sentence must be imposed to prevent the Defendants from repeating criminal these acts in the future.

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[2] This Court must sentence CRAMER and BARBER based on their own conduct and relevant characteristics, but should give substantial weight to the context of their unlawful conduct: their participation in the January 6 riot.

CRAMER and BARBER have pleaded guilty to the Information, charging each of them violating 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count One) and 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in any Capitol building) (Count Two). These offenses are Class B misdemeanors. 18 U.S.C. § 3559. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, other judges of this court have sentenced Capitol breach defendants who spent time significant time in the U.S Capitol Building.

---

[2] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

In *United States v. Lattanzi*, 22-cr-28 (TSC), Judge Chutkan imposed a sentence of 14 days' incarceration[3] where the defendant entered the Capitol at 3:22 p.m., remained in the Capitol for 5 minutes, and left when an officer told him to leave. The defendant lied to the FBI when first approached, but then made truthful statements through his lawyer the next day.

In *United States v. Frederick Skylor Webb*, 23-cr-225 (RCL), Judge Lamberth sentenced a defendant to 24 months of probation with 14 days intermittent confinement. The defendant entered the U.S. Capitol Building through the Senate Wing Door at approximately 3:05 p.m., filmed the events with his cell phone and spoke with other rioters until he left the Capitol, spending approximately 14 minutes inside.

In *United States v. Derek Sulenta,* 22-cr-340 (TSC), this Court sentenced the defendant to 14 days' incarceration where he spent 47 minutes inside the Capitol building and bragged on social media that day about "breach[ing] the capital (sic) building" and called the events "wild." CRAMER and BARBER did not remain inside the building as long as Sulenta nor brag on social media. Still, they similarly showed a lack of understanding and remorse for their actions during their interviews, especially BARBER who continued to state he did nothing wrong.

CRAMER and BARBER, like these defendants, entered the U.S. Capitol after the initial breach and remained on the U.S. Capitol grounds for a long period of time. While there is no indication they lied or bragged on social media, they remained inside the U.S. Capitol for approximately 30 minutes, longer than most of the defendants cited above, surrounded by and contributing to the chaos inside.

---

[3] This sentenced was imposed before *United States v. Little*, 78 F.4th 453, 461 n.7 (D.C. Cir. 2023). The same result can be applied as noted below consistent with *Little* as part of a condition of probation.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

V.      **Restitution**

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[4] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction,

---

[4] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

13

18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that CRAMER and BARBER must pay $500 in restitution, which reflects in part the role CRAMER and BARBER played in the riot on January 6.[5] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) CRAMER and BARBER's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 11.

## VI.  Fine

The defendant's convictions for violations of 40 U.S.C. §§ 5104(e)(2)(D) and (G) subject them to a statutory maximum fine of $5,000 for both counts. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); *See* U.S.S.G. § 5E1.2(d). The sentencing guidelines require a fine in all cases, except where the defendant

---

[5] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

establishes that he is unable to pay and is not likely to become able to pay any fine. U.S.S.G. § 5E1.2(a) (2023). Here, the defendant's financial assets set forth in the PSR suggest that the defendant is unable, and is unlikely to become able, to pay a fine.

## VII.    Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant to 14 days' incarceration on Count One and 36 months' probation on Count Two, 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.  Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on CRAMER and BARBER's liberty as a consequence of their behavior, while recognizing their acceptance of responsibility for their crime.

        Respectfully submitted,

        MATTHEW M. GRAVES
        United States Attorney
        D.C. Bar No. 481052

By:    s/ *Joseph Huynh*
        JOSEPH H. HUYNH
        D.C. Bar No. 495403
        Assistant United States Attorney (detailed)
        405 East 8th Avenue, Suite 2400
        Eugene, Oregon 97401-270